IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT M. KURTH,

          Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,[1]

          Defendant.

OPINION AND ORDER

20-cv-809-wmc

---

Under 42 U.S.C. § 405(g), plaintiff Scott M. Kurth seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. While contending that remand is warranted on several grounds, this opinion will focus on whether the administrative law judge ("ALJ") properly accounted for Kurth's diagnoses of Multiple Sclerosis and neurogenic bladder. For the reasons that follow, the court will remand for further proceedings.

BACKGROUND

On September 26, 2019, the ALJ held a hearing in which plaintiff Scott Kurth appeared by video. (AR 13.) Kurth has at least a high school education, can communicate in English, and previously worked as a meat cutter. (AR 25.) He was 47 years old at the time that ALJ Michael Schaefer issued his written opinion on January 16, 2020, finding that Kurth was "not disabled" within the meaning of the Social Security Act. (*Id.*)

---

[1] Consistent with defense counsel's recent practice of adopting a new caption to reflect Kilolo Kijakazi's appointment as the Acting Commissioner of the Social Security Administration on July 9, 2021, the court has adjusted the caption in this case.

Specifically, the ALJ found that Kurth had not engaged in substantial gainful activity since March 15, 2017, and had the following severe impairments: "degenerative disc disease and disc bulges of the lumbar spine; right wrist and thumb osteoarthritis; and urinary retention with the use of a catheter." (AR 16.) While the ALJ acknowledged that Kurth was formally diagnosed with Multiple Sclerosis ("MS") by a specialist just a month after the evidentiary hearing, he found "no evidence [it] has been a relevant impairment for at least 12 months," nor that it would continue to be severe for 12 months. (AR 17.) For that reason, the ALJ found that Kurth's MS was "not severe for the purposes of this disability application" and did not further address the MS diagnosis in his opinion. (Id.) Kurth's past history of substance abuse disorder and mental illness was also considered, but the ALJ did not find either to be severe for the relevant period. (AR 17-18.) Ultimately, the ALJ found that none of these conditions (nor any combination thereof) met or exceeded the severity listed in 20 CFR Part 404, Subpart P, Appendix 1 as of June 30, 2017. (AR 19.) Consistent with these findings, the ALJ also crafted a Residual Functional Capacity ("RFC") allowing for light work with the following restrictions:

> He can frequently balance, occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, and can never climb ladders, ropes or scaffolds. He can use his right upper extremity to frequently handle, finger, and reach side to side and to the front but can only occasionally perform overhead reaching, pushing, or pulling. He must avoid more than occasional exposure to extremes of vibration or to workplace hazards (including moving machinery and unprotected heights).

(AR 21.) Moreover, with this RFC, the vocational expert testified that Kurth would be able to perform a significant number of jobs within the national economy. (AR 25.)

Deferring to that opinion, therefore, the ALJ submitted his finding that Kurth was "not disabled." (AR 26.)

## OPINION

A federal court's standard of review with respect to a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and ensure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

While there are several concerning aspects of the ALJ's decision, the court is most troubled by the ALJ's dismissal of Kurth's MS diagnosis, which came soon after the evidentiary hearing in this case. Rather than reopening the medical record for further guidance, the ALJ purported to find that Kurth's Multiple Sclerosis had not been present for the previous 12 months based on a lack of MRI evidence or gait disturbance before his diagnosis. (AR 17.) This finding alone was apparently enough for the ALJ to dismiss

3

Kurth's MS as "not severe" for the purposes of assessing his disability status, choosing not even to address the conflict with his earlier conclusion that "there is sufficient evidence to support finding the claimant's multiple sclerosis has been severe during the period at issue." (AR 17.)  Worse, in reaching these apparently conflicting findings, the ALJ appears to have relied solely on medical records from Kurth's treating physicians *before* they even contemplated an MS diagnosis, while acknowledging his trip to an emergency room and preliminary visit to a neurologist once the MS was diagnosed.  (Id.)  Using these pre-MS records and two doctor's visits after diagnosis, the ALJ somehow found "no evidence" that Kurth's MS symptoms had "been a relevant impairment for at least 12 months" and given his recent diagnosis and beginning treatment, "found" it is unclear whether he will "be symptomatic for at least 12 months."  (*Id*.)  Finally, the ALJ seemed to ignore completely that Kurth had problems with leg numbness, tingling, pain, and urinary retention for many months prior to his MS diagnosis, all of which are symptoms of MS.  (AR 22-24.)

In the government's brief, it argues Kurth's doctors had attributed those symptoms to his other ailments, such as substance abuse and degenerative disc disease, meaning that they could not be symptoms of MS.  (Def.'s Opp. (dkt #25) pg. 10-11.)  There are three, obvious problems with that argument.  First, the ALJ never relies on such a finding in discussing Kurth's MS diagnosis.  In fact, in the context of addressing his MS, the ALJ mentions nothing about Kurth's numbness, tingling, or neurogenic bladder at all decision. (AR 17.)  If the ALJ was even considering the alternate diagnoses, his complete failure to address the distinct possibility that these symptoms may be relevant precursors of Kurth's

4

MS constitutes a collapse of any "logical bridge" to his ultimate conclusion that his MS was not yet severe during the relevant period. *Stephens*, 888 F.3d 323 at 327.

Second, the government's suggestion that those symptoms are attributable to Kurth's other conditions is not strongly supported by the medical record. To the contrary, the records merely indicate that: (1) Kurth's primary doctor assumed his tingling was due to back problems without even considering an MS diagnosis; and (2) a physician assistant once guessed that Kurth's bladder issues were connected to his alcohol abuse. (Def.'s Opp. (dkt #25) pg. 10-12.) Not once did a doctor assess Kurth's medical history in light of his subsequent MS diagnosis, much less decide whether his previous symptoms had been related, and the ALJ was certainly not qualified to make that assessment himself.

Thus, this second concern anticipates the court's third: to the extent that the ALJ may have implicitly decided that Kurth's earlier symptoms were unrelated to MS, he was improperly "playing doctor." *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). It is neither the ALJ's role nor his area of expertise to decide what is a sign or symptoms of a complex disease like Multiple Sclerosis. At the very least, the ALJ should have sought further medical opinions in light of Kurth's MS diagnosis to assess whether his earlier symptoms may have been connected and to what extent their likely continuation might limit his ability to work. As just one example, it is undisputed that by the time Kurth was formally diagnosed with MS, he was already walking with a cane and had reported trouble feeling his lower extremities, neither of which is reflected in the ALJ's finding that Kurth could do light work. (Pl.'s Br. (dkt. #19) pg. 16.) Instead, the ALJ seems to explain away

both developments as an attempt to get oxycodone or part of general malingering, without a medical foundation for either finding.

Another problem noted in the ALJ's decision concerned Kurth's urinary retention. Kurth's treating physician, Dr. Tuttle, recommended he be allowed unscheduled breaks consistent with his documented need to self-catheterize every 4-6 hours due to a neurogenic bladder, which the ALJ purported to discount as "not supported by objective evidence and [relying] on the claimant's reports of pain." (AR 23-24.) The government now argues that "there is no indication that he would be unable to [self-catheterize] during normal work hours" (Def.'s Opp. (dkt. 25) pg. 12), but Dr. Tuttle explicitly opined that Kurth would need unscheduled breaks while working and the record reflected Kurth's longstanding need to catheterize to evacuate his bladder. (AR. 23-24.) Additionally, the ALJ appears to rely on a single self-report in the record that Kurth was having "less bladder problems" as obviating any need to accommodate his long history of urinary retention. (AR 23.) The ALJ further discounted the opinion of Kurth's urologist as incomplete, instead purporting to defer to Dr. Tuttle's "more robust report." (AR 24.) However, the ALJ went on to not only ignore Dr. Tuttle's express recommendations to address Kurth's self-catheterization, but completely discounted *any* medical opinion suggesting Kurth had work limitations related to his urinary retention, even opinions of physicians that the ALJ otherwise found credible and persuasive.

This unexplained discounting is particularly concerning since a claimant's need for unscheduled breaks has been found to be preclusive of all work; as such, finding that unscheduled breaks were necessary may well have led to a different outcome for Kurth.

6

*E.g., Schloesser v. Berryhill*, 870 F.3d 712, 720 (7th Cir. 2017). While an ALJ need not discuss every single medical record, he "may not analyze only the evidence supporting [his] ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

For all these reasons, the court will remand this matter for further fact finding and explanation.[2]

ORDER

1) The decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, finding that plaintiff Scott Kurth is not eligible for social security disability benefits, is REVERSED AND REMANDED under sentence four of 42 U.S.C. 405(g) for further proceedings consistent with the opinion set forth above.

2) The clerk of court is directed to enter judgment for plaintiff.

Entered this 9th day of September, 2021.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

---

[2] Given the recent MS diagnosis, the court would encourage the ALJ to consider how MS may affect Kurth's other ailments, particularly his hands and ability to manipulate.